**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANDREA D. LOGUIDICE,

                                        Plaintiff,

          v.                                                    1:14-CV-1323
                                                                (TJM/CFH)
EDWARD MCTIERNAN, STUART BRODY,
BENJAMIN CONLON, MARLINE AGNEW,
DEBORAH CHRISTIAN, PHIL LODICO,
MARC GERSTMAN, and JOHN DOES 1-5,

                                        Defendants.

**APPEARANCES:**                          **OF COUNSEL**:

BOIES SCHILLER & FLEXNER LLP             GEORGE F. CARPINELLO, ESQ.
30 South Pearl St., 11th Fl.             JOHN F. DEW, ESQ.
Albany, New York 12207
Attorneys for plaintiff

NAPOLI SHKOLNIK PLLC                     MICHAEL T. HAWRYLCHAK, ESQ.
360 Lexington Avenue, 11th Fl.
New York, New York 10017
Attorneys for plaintiff

NEW YORK STATE ATTORNEY GENERAL          COLLEEN D. GALLIGAN, ESQ.
The Capitol
Albany, New York 12224
Attorneys for defendants

CLARICK GUREON REISBAUM LLP              NICOLE GUERON, ESQ.
220 5th Ave., 14th Fl.
New York, New York 10001
Attorneys for nonparties

### MEMORANDUM-DECISION AND ORDER

#### I. Background

Presently pending before the Court is plaintiff's second Motion to Compel.  Dkt. No.

65.  Defendants Marline Agnew, Stuart Brody, Deborah Christian, Benjamin Conlon, Marc Gerstman, Phil Lodico, and Edward McTiernan opposed the motion (collectively "defendants").  Dkt. No. 69.  Non-parties Coleman, Hohenstein, Executive Chamber, Office of the Governor, New York State Department of Environmental Conservation ("DEC"), and New York Governor's Office of Employee Relations ("GOER") also opposed (collectively "non-parties," where appropriate).[1]  Dkt. No. 70.  Plaintiff filed a reply.  Dkt. No. 71.  Plaintiff initially filed a motion to compel in November 2015.  Dkt. No. 41.  On August 25, 2016, the Court granted in part and denied in part plaintiff's motion to compel.  Dkt. No. 47.  In September 2016, plaintiff filed a Motion for Reconsideration of the August 25, 2016 Decision on the Motion to Compel.  Dkt. No. 48.  The Court denied the Motion for Reconsideration.  Dkt. No. 51.  At issue in the Motion to Compel currently before the Court is whether (1) the disclosure of certain documents and testimony demonstrates that the advice of counsel was "essential" to plaintiff's termination, and, thus, amounts to a broad waiver of the DEC's attorney-client privilege; and (2) raising the Mount Healthy defense puts the legal advice defendants received about plaintiff's alleged conflict of interest at issue, amounting to a broad subject-matter waiver of the DEC's attorney-client privilege.  See Dkt. No. 65.  Plaintiff demands an order compelling defendants to "testify as to all discussions regarding the decision to terminate Plaintiff's employment, and order the [nonparties] to produce any documents withheld under a claim of DEC's privilege

---

[1]  Non-parties note that plaintiff's motion "largely seeks documents and testimony from Defendants, not the Non-parties.  Since the motion implicates DEC's attorney-client privilege, DEC joins Defendants' opposition brief.  The other Non-Parties take no position as to Defendants' opposition brief."  Dkt. No. 70 at 1.

relating to the termination decision." Dkt. No. 65-1 at 13.   For the reasons that follow,

plaintiff's Motion to Compel, Dkt. No. 65, is granted in part and denied in part.


## II.  Arguments

Plaintiff first argues that defendants have

> effected a broad, subject-matter waiver regarding any and all
> discussions – including legal advice – about the decision to
> terminate the Plaintiff's employment: Defendants have
> produced several documents that disclose attorney-client
> privileged communications and privileged work product, and
> Defendants have provided testimony revealing some of the
> privileged legal advice that they provided and that they
> received.

Dkt. No. 65-1 at 5.  More specifically, plaintiff argues that this Court concluded that Mr.

Gerstman has the authority to waive the DEC's privilege, and contends that Gerstman

"and the other Defendants" did waive this privilege by testifying "about certain privileged

discussions and produced documents that contain otherwise privileged information."  Id.

Plaintiff next argues that defendants' assertion of the Mount Healthy affirmative defense

acts as a separate waiver of the privilege because the defense requires inquiry into the

state of mind of the defendants, and any legal advice they received about plaintiff's

conduct and termination is relevant to defendants' states of mind in deciding to terminate

plaintiff.  Id. at 12-15.  Finally, plaintiff contends that defendants' selective disclosure of

some privileged advice and work product and withholding of other advice and work

product is "prototypical unfairness" which must result in plaintiff being permitted "to

discover all privileged communications and documents related to the decision to terminate

Plaintiff's employment." Dkt. No. 65-1 at 12.

Defendants argue that the Motion to Compel should be denied because
(1) plaintiff seeks to relitigate issues already decided, (2) defendants and nonparties did
not "claim[] privilege with regard to any fact or information reflected in the only two
documents at issue – the McTiernan Memo and the Brody Personal Notes,
(3) McTiernan did not raise the privilege to decline to answer any questions, (4) the
questions Lodico declined to answer "were all consistent with the Court's rulings on
Plaintiff's prior motions," (5) the questions Conlon declined to answer "were about a
conversation which this Court already held was privileged, (6) plaintiff fails to identify any
documents she believes should be disclosed, and (7) this Court has held that there is no
authority for plaintiff's argument that "the Mount Healthy defense alone can waive the
attorney-client privilege."  Dkt. No. 69 at 5.

### III.  Legal Standards

The legal standards for waiver of the attorney-client privilege and work-product
privilege were laid out in great detail in this Court's prior orders.  Dkt. Nos. 47, 51.  Thus,
the Court will not fully restate the general law governing attorney-client privilege and
waiver here; thus, reference is made to this Court's Orders at docket numbers 47 and 51.

### IV.  Analysis

### A.  Testimony

### 1.  Gerstman's Testimony

4

Plaintiff argues that Gerstman's deposition testimony amounts to an independent waiver of the attorney-client privilege. Dkt. No. 65-1 at 7. Plaintiff contends Gerstman's testimony about why he reached out to Volforte demonstrates that he received legal advice, and relied on that advice. Id. at 7-8. Plaintiff contends that Gerstman's testimony is an "independent waiver of the attorney-client privilege because Mr. Gerstman willingly testified about the legal advice that he received from Mr. Volforte." Id. at 9.

The first portion of testimony plaintiff contends acts as a waiver is from Gerstman's deposition wherein he testified that he sought legal advice from Volforte and GOER general counsel regarding the decision to discharge plaintiff. Dkt. No. 65-1 at 8. Gerstman testified that he spoke to Volforte to "make sure it was appropriate legally to discharge her" as he "didn't want to violate any laws" in doing so. Dkt. No. 65-4 at 3. Gerstman then testified that Volforte "said that we were on firm ground if we made a decision to fire her," and Gerstman understood that statement to mean that "we were legally authorized to do so without any repercussions." Id. at 4.

Although the Court finds that the portion of Gerstman's testimony about the reasons why he consulted with Volforte does not amount to waiver of the attorney-client privilege, his testimony about the legal advice Volforte provided does. Dkt. No. 65-4 at 3-5. Further, as this Court has previously held, Gerstman – in his role as Executive Deputy Commissioner – appears to have the authority to waive the attorney-client privilege on behalf of the DEC. Dkt. No. 47 at 34. By testifying as to the overall advice he received, Gerstman "testifie[d] concerning portions of the attorney-client communication," and, thus, waived the attorney-client privilege on behalf of the DEC." In re County of Erie, 546 F.3d

5

222, 228 (2d Cir. 2008) (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)).

When this matter was previously before the Court, it did not have before it any evidence that Gerstman relied on counsel in making the determination to terminate plaintiff. Dkt. Nos. 43, 47. The Court agrees with plaintiff that Gerstman's testimony now elucidates the issue. It is clear that Volforte's advice to Gerstman and McTiernan was legal and privileged, and that Gerstman relied on that advice because he testified that he "felt that we were – after checking with Mike Volforte – we were entirely within our rights to discharge the probationary employee." Dkt. No. 65-4 at 3-5. As Gerstman testified as to the legal advice he received and relied on, this portion of his testimony is an implied waiver of the attorney-client privilege.


## 2. McTiernan's Testimony

Plaintiff does not appear to argue that any of McTiernan's testimony amounts to an "independent waiver" of the attorney client privilege. Dkt. No. 65-1 at 9. Plaintiff instead suggests that McTiernan's testimony about his discussion with Volforte "makes clear that the advice provided by Valforte was legal advice, and thus the production of the August 5 memorandum waives the attorney-client privilege on behalf of the DEC." Dkt. No. 65-1 at 9. Volforte's testimony that his discussion with McTiernan and Gerstman "involved legal advice" further supports that conclusion, plaintiff argues. Id. Plaintiff also contends that, during his deposition, McTiernan inappropriately invoked the attorney-client privilege in reference to his conversations with Lodico, despite McTiernan's testifying to privileged

conversations with Volforte.  Dkt. No. 65-1 at 10.  Thus, plaintiff argues that, because defendants waived the privilege, Lodico's refusal to testify about conversations with McTiernan was improper.  Id.  Plaintiff similarly argues that Conlon improperly refused to testify about conversations with Brody about the propriety/impropriety of plaintiff's conduct.  Id.  The Court agrees that McTiernan's testimony confirms what was previously unclear – that the testimony he received from Volforte was legal in nature, and that McTiernan relied on that legal advice in determining how to handle plaintiff's alleged conflict of interest and in the ultimate decision to terminate her.  However, as plaintiff does not argue as such, the Court does not address whether McTiernan's testimony would amount to an independent waiver of the attorney-client privilege.

## B.  Document Production

### 1.  McTiernan Memo

Plaintiff appears to argue that defendants' release of the McTiernan Memo during discovery, combined with McTiernan's deposition testimony, amounts to a broad waiver of the attorney-client privilege because it demonstrates that advice of counsel was "essential" to the decision to terminate plaintiff, and, thus, the advice of counsel is "at issue."  Dkt. No. 65-1 at 7.  As this Court has repeatedly set forth, the McTiernan Memo references that the advice McTiernan received from Volforte was that plaintiff's "error in judgment was serious enough to warranted [sic] discipline in the case of a full time employee and termination of an employee in probation."  Dkt. No. 65-1 at 7 (citing Dkt. No. 41-14 at 2).

7

Defendants contend that release of the McTiernan Memo did not waive the attorney-client privilege because either the vast majority of the memo is not privileged or does it does not reference privileged conversations/material. Dkt. No. 69 at 6. Defendants contend further that this Court has already ruled that the release of the McTiernan Memo did not amount to broad subject matter waiver, and that there has been no document produced or testimony provided since that decision "that waived privilege with regard to any matter for which a privilege has been claimed." Id. at 8.  Defendant's recounting of this Court's prior rulings is not entirely accurate.  Instead, the Court ruled that the only material that appears privileged within the McTiernan Memo is with relation to advice McTiernan received from GOER and Governor's Counsel.  Dkt. No. 47 at 27.  The Court noted that this portion of the McTiernan memo <u>may</u> contain attorney-client privileged material <u>if</u> the portion of it referencing the advice McTiernan received was legal advice from counsel, and not advice he received from personnel employees Cadrette and Belgrade.[2] Id.  Addressing the Motion for Reconsideration, the Court noted that, "[t]o the extent that the Court erred in concluding that DEC cannot waive the privilege with respect to GOER and Governor's Counsel, such a finding was harmless for the reasons below." Dkt. No. 51 at 9-10.  The Court then explained that, although it acknowledged that giving

---

[2]  "In making this statement, McTiernan collectively refers to the advice he received about plaintiff's conduct.  However, it is unclear whether McTiernan is contending that the recommendations he received to terminate plaintiff were based on the various advisors' opinions that plaintiff violated certain laws or whether this advice was also based on a personnel/human resources reason not directly related to any potential legal violations . . . .  It is at least arguable . . . that discussions with GOER would involve opinions on whether plaintiff violated certain ethics rules or laws.  If it is the case that McTiernan, Hohenstein, Coleman, and Valforte discussed whether plaintiff's conduct amounted to violations of laws or regulations, such a request or receipt of legal advice would appear to be an attorney-client privileged matter."  Dkt. No. 47 at 38.

of legal advice may implicate the privilege, it did not conclude that the DEC waived the privilege with respect to conversations between DEC and GOER and Governor's Counsel because "it could not be determined from the McTiernan Memo what [defendant][3] discussed with GOER and Governor's Counsel" and that it was "unclear from the [McTiernan] Memo whether McTiernan's reference to the 'advice' he received was to the advice received from personnel or from Governor's counsel." Id. at 10.  The Court then concluded that because it was unable to determine whether McTiernan was referring to conversations with personnel (Cadrette and Belgrade) or GOER and Governor's Counsel, the Court cannot decide whether the advice to which McTiernan references is privileged.

Since the Motion for Reconsideration, McTiernan has testified that the relevant portion of the memo refers to advice from counsel.  Dkt. No. 65-5 at 3, 5.  His testimony, along with Gerstman's, confirms that the advice referenced in the McTiernan Memo involved the receiving of legal advice relating to plaintiff's termination.  Id.; Dkt. No. 65-4. McTiernan testified that the advice referenced in the memorandum involved the "application of law to a particular employee".  Dkt. No. 65-5 at 6.  McTiernan testified that he and Gerstman sought "advice about how to respond to the facts or conclusion that I had come my way concerning Andrea."  Id. at 3.  He sought out Volforte, general counsel at GOER, to "get confirmation" that the office of personnel provided "appropriate and prudent" advice.  Id.  McTiernan testified that Volforte "provided a good framework for analyzing the situation" and provided him with a "checklist of issues to be considered and

---

[3]  The Decision included a typographical error, referring to plaintiff's discussion with GOER and Governor's Counsel.  This should have read "defendant" as the Court was referring to McTiernan's discussions.  Dkt. No. 51 at 10.

he offered the confirmation or advice that in this circumstance, termination really was the only option." Id. at 4.

Similarly, Gerstman testified that he spoke with Volforte about plaintiff because he "wanted to ensure that we were doing everything within the letter of the law in discharging her" and "didn't violate any laws by doing so." Dkt. No. 65-4 at 3. Gerstman and McTiernan presented Volforte with the facts surrounding plaintiff's alleged actions, and Volforte advised that they were on "firm ground" if they chose to fire plaintiff, which Gerstman testified he understood to mean that they were legally authorized to fire plaintiff "without repercussions[,]" such as a "lawsuit . . . challenging the decision." Dkt. No. 65-4 at 3-4. Gerstman testified that after he spoke with Volforte, he felt that "we were . . . entirely within our rights to discharge the probationary employee, that that was going to remedy the situation, and that was sufficient for our purposes." Id. at 5. As Volforte's advice about whether DEC was legally-authorized to terminate plaintiff would amount to attorney-client privileged communications, the Court determines that this portion of the McTiernan Memo, Dkt. No. 65-3 at 2, which discloses a portion of this privileged conversation. Next, it must be decided whether release of the document in discovery waived the attorney-client privilege, and if so, the extent of the waiver.

Defendants argue that they have "not raised a claim of privilege with regard to McTiernan and Gerstman's conversation(s) with Volforte, and McTiernan, Gerstman and Volforte all answered all questions put to them regarding their discussion(s)." Dkt. No. 69 at 11-12. Because no claim of privilege was raised, defendants argue that the McTiernan Memo "does not implicate privileged communications between DEC attorneys," and, as

such, "Plaintiff has failed to identify any claims of privilege raised by Defendants that relate to legal advice discussed in the McTiernan Memorandum." Id. at 12.

Defendants' argument must fail.  Confusingly, defendants appear to concede that at least one portion of the McTiernan Memo contains privileged information, but argue that because they did not raise privilege and because defendants testified to these conversations without raising privilege, the release of the McTiernan Memo does not amount to a broad waiver of the attorney-client privilege.  Dkt. No. 69 at 13.  Further, although defendants may not have raised privilege in the depositions when testifying about the contents of some of the conversations referenced in the McTiernan Memo – specifically McTiernan and Gerstman's conversation with Volforte  – it does not follow that the conversations were not privileged, or that their testimony about such conversations revealing portions of those conversations, did not amount to waiver of that privilege.  As explained above, it its order on the Motion for Reconsideration, the Court held that a ruling on the issue whether the release of the McTiernan Memo waived the privilege was premature, and advised plaintiff that if she were to "bring the contents of these conversations before the Court, the Court will then address her concerns under the lens of whether the client, DEC, waived the privilege".  Id. at 11 n.3.  This issue is now ripe for review.

The attorney-client privilege is generally waived "by voluntary disclosure of the [privileged] communication to another party."  Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015).  It is well-settled that "[w]ith some exceptions, the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or

litigation adversary." Scott, 94 F. Supp.3d at 598.  The privilege also can further be

waived "when a client asserts reliance on an attorney's advice as an element of a claim or

a defense," "testifies concerning portions of the attorney-client communication," or "places

the attorney-client relationship directly at issue." In re County of Erie, 546 F.3d at 228.

Because the McTiernan Memo contained privileged information about Volforte's legal

advice, as confirmed by Gerstman and McTiernan's testimony, and Gerstman and

McTiernan relied on Volforte's legal advice referenced in the Memo in terminating plaintiff,

defendants release of the McTiernan Memo during discovery has waived the attorney-

client privilege.

Plaintiff argues that the waiver of the privilege through release of the McTiernan

Memo, along with McTiernan and Gerstman's testimony about their conversations with

Volforte, means that defendants have waived the privilege with regard to all other

testimony and documents on this topic.  Further, plaintiff contends that despite "having

testified regarding privileged discussions with Volforte," McTiernan improperly invoked the

privilege to decline to testify about discussions he had with Lodico.  Plaintiff argues that

Lodico improperly invoked the privilege and declined to testify about his discussion

with/advice he gave to McTiernan or his professional opinion about plaintiff's conduct,

apparently contending that the McTiernan Memo and McTiernan and Gerstman testimony

waived the privilege, and, thus, Lodico cannot assert the privilege.  Dkt. No. 65-1.  Plaintiff

similarly argues that Conlon improperly invoked the privilege and refused to testify as to a

July 14, 2014 conversation he had with Brody.  Finally, plaintiff argues that defendants

and nonparties improperly "continue to maintain privilege logs that contain thousands of

documents." Dkt. No. 65-1 at 11.  The Court will address below whether the waiver is limited to the conversation between Gerstman, McTiernan, and Volforte, or whether the waiver acts as a broad, subject-matter waiver[4] as to all otherwise privileged discussions or documents involving the determination to terminate plaintiff.

## 2. Brody Notes

Plaintiff argues that Brody's notes, the document entitled, "Personal Notes re her possible violations," Dkt. No. 65-7, is protected by the work-product privilege, and that the release of the document further demonstrates waiver of this privilege.  The document referenced Brody's opinion that it was unnecessary to inform JCOPE of the plaintiff's alleged conflict of interest.  Dkt. No. 65-7.  Brody testified as to his belief that the document  was attorney- work product.  Dkt. No. 65-8 at 3.  This Court held in its August 25, 2016 Memorandum-Decision & Order that the document, if drafted solely for Brody's eyes, would not likely be protected by the attorney-client privilege, but "[i]f anything, this kind of document would be closer to protected work-product."  Dkt. No. 47 at 44.  Further, the Court noted that defendants did not argue that Brody drafted the document in anticipation of litigation.  Id.  The Court's Decision observed that defendants did not claim a privilege with respect to the document and the Court "anticipates that defendants will

---

[4] "Subject matter waiver applies where the privilege holder puts the privileged communications in issue by virtue of his claims or defenses and prejudices the opposing party, in other words, seeks to use the privilege as both a 'sword' and a 'shield'; whereas a more limited waiver applies if the holder releases only communications or portions of communications favorable to his litigating position, while withholding any unfavorable ones, and the opposing party is not prejudiced." E.E.O.C. v. Johnson & Higgins, Inc., No. 93 CIV. 5481 (LBS), 1998 WL 778369, at *8 (S.D.N.Y. Nov. 6, 1998) (citations omitted).

testify freely regarding this document." Id.  However, the Court did not have any

questions before it relating to the document, and, thus, it held that it could not direct

defendants to answer questions that had not yet been asked. Id.

Defendants argue that the Brody notes document is attorney-work product and that

its disclosure does not amount to waiver of the attorney-client privilege "with regard to any

other matter."  Dkt. No. 69 at 12-13.  Defendants again argue that they acknowledged the

work-product privilege and permitted plaintiff to answer all questions about this document,

but that the release and testimony around this document "did not affect a larger waiver."

Dkt. No. 69.  To support this argument, defendants argue that Brody testified that he

prepared the document "for himself" and did not discuss "this matter with anyone else nor

shared the memorandum with anyone at DEC"; thus, because the document "is limited to

Brody's investigation of his own personal ethical obligations, was not shared with anyone

else at DEC, and was not part of the decision to terminate Plaintiff, release of this

document and Brody's testimony regarding the same cannot waive Defendants' claim of

privilege with regard to some other unrelated privileged communication." Id. at 13.

Defendants point out that plaintiff did not identify "any document or testimony for which

Defendants have claimed a privilege that should be disclosed in light of the disclosure of

the Brody Personal Notes document."  Id.

Plaintiff appears to argue that disclosure of the Brody notes, considered together

with disclosure of the McTiernan Memo and related testimony further demonstrates an

intent to release only those portions of privileged materials/conversations that benefit

defendants.  Dkt. No. 65-1 at 10 (arguing that, "[d]espite these waivers of privilege

14

regarding some documents and some discussions" defendants and nonparties "have continued to invoke privilege to avoid providing some testimony or documents.").  Thus, plaintiff is suggesting that the disclosure of the Brody notes amounts to "prototypical unfairness" wherein defendants could release privileged communications favorable to defendants and withhold unfavorable ones to benefit defendants.  Id. at 12.

The Court agrees with parties that the Brody notes document is attorney work-product, that release of the document waived the work-product privilege, and that Brody's testimony about its content independently waives the attorney work-product privilege.[5] However, it is a closer question whether the waiver amounts to waiver of the attorney-client privilege for any other content or, as plaintiff argues, waiver of all attorney-client privileged material/testimony relating to the decision to fire plaintiff.  With the Brody notes, unlike the McTiernan Memo, there is no testimony about substance of the content referenced in the Brody document, and defendants demonstrate that Brody did not share this document with others, so it cannot be said that any defendants relied on its content. The undersigned agrees that, on these facts, the release of the document does not independently amount to a broader waiver.  Plaintiff appears to suggest that, because defendants' states of mind are relevant to the defendants' defense, considerations defendants made in determining whether to terminate plaintiff are relevant; however,

---

[5]  The analysis remains the same for waiver of attorney-client privilege and attorney work product privilege.  See, e.g., Local 851 of Intern. Bros. of Teamsters v. Kuehne & Nagel Air Freight, Inc., 36 F.Supp. 2d 127, n.3 (E.D.N.Y. 1998) ("[W]hen disclosure is made to an adversary . . . the analysis is the same for both the attorney-client privilege and work product immunity.") (citing Intern. Bus. Machines Corp. v. United States, 37 Fed.Cl. 599 (1997)).

because it appears that Brody's notes were not communicated to anyone else, the Court

concludes that it cannot be said that they were relied upon or relevant to any defendants'

state of mind beyond Brody.  However, although the Court finds that the release of the

Brody notes does not amount to an independent subject matter waiver of the attorney-

client privilege, because the Court finds that the McTiernan Memo and related testimony,

along with the Mount Healthy defense, to be discussed below, waived the attorney-client

privilege, the Court's finding that relase of the Brody notes does not change the Court's

ultimate finding.

      In addition, plaintiff contends that several defendants – including McTiernan,

Conlon, Lodico, and Volforte – refused to testify, citing privilege, which should not be

permitted in light of the disclosures which waived the privilege.  Specifically, plaintiff

argues, despite "having testified regarding privileged discussions with Mr. Volforte,"

McTiernan improperly invoked the privilege during his deposition to decline to testify about

discussions he had with Lodico.  Dkt. No. 65-1 at 10.  Plaintiff argues that Lodico

improperly invoked the privilege and declined to testify about his discussion with/advice he

gave to McTiernan or his professional opinion about plaintiff's conduct, apparently

contending that the McTiernan Memo and McTiernan/Gerstman testimony waived the

privilege, and, thus, Lodico cannot assert the privilege.  Id. at 10-11.  Plaintiff similarly

argues that Conlon improperly invoked the privilege and refused to testify as to a July 14,

2014 conversation he had with Brody.  Id.  Finally, plaintiff argues that defendants and

nonparties improperly "continue to maintain privilege logs that contain thousands of

documents."  Id. at 11.  The Court will address these claims through its review of the

scope of the waiver in the following section.

### C.  Scope of Waiver

The Court must determine the scope of the waiver of the attorney-client privilege as it relates to the disclosed documents and the related testimony from Gerstman and McTiernan.  The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." In re County of Erie, 546 F.3d at 228 (quoting Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)).

> While "it is well settled that 'the burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it,'" In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (quoting United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir.1997)), "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust [are] formulated with caution."

Hicks v. T.L. Cannon Mgmt. Corp., No. 13-CV-6455W, 2015 WL 5167225, at *2 (W.D.N.Y. Sept. 3, 2015) (quoting In re County of Erie, 546 F.3d at 228)).   "In order to balance this protection of confidentiality with the competing value of public disclosure," courts apply the attorney-client privilege "only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (internal quotation marks and citation omitted) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). Attorney-client privilege

> "is generally waived by voluntary disclosure of the [privileged]
> communication to another party." Schaeffler, 806 F.3d at 40.
> Waiver can be made expressly or implicitly, and "may be
> implied in circumstances where it is called for in the interests of
> fairness." In re Sims, 534 F.3d 117, 132 (2d Cir. 2008).
> Waiver by implication commonly arises in specific contexts,
> including "when a client testifies concerning portions of the
> attorney-client communication" and "when a client asserts
> reliance on an attorney's advice as an element of a claim or
> defense." In re Cty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008).
> In other words, a "party cannot partially disclose privileged
> communications or affirmatively rely on privileged
> communications to support its claim or defense and then shield
> the underlying communications from scrutiny by the opposing
> party."

Ingenito v. Riri USA, Inc., No. 11CV2569 (MKB/RLM), 2015 WL 9412541, at *6 (E.D.N.Y.

Dec. 22, 2015).  Further, "where a court determines a party has implicitly waived

attorney-client privilege, similar fairness considerations limit the scope of that waiver to the

subject matter of the disclosed communication." Id. (quoting In re Grand Jury

Proceedings, 219 F.3d 175, 183 (2d Cir. 2000)).

   Here, the Court first finds that the attorney-client privilege was waived with regard

to the all of the advice McTiernan and Gerstman received from Volforte.  If it were the

case that defendants did not rely on the advice of counsel as part of an affirmative

defense, the Court likely would have stopped its analysis here, and limited the scope of

the waiver solely to this advice.  However, as will be discussed, the Court now finds that

defendants' reliance on the advice of counsel is a significant portion of its Mount Healthy

defense, and, thus, waiver of the privilege with respect to this advice must result in subject

matter waiver as to all of the legal advice defendants received regarding plaintiff's alleged

conflict of interest and the legal advisement and considerations from counsel that went

into the decision to terminate her employment.

### D.  __Mount Healthy__ Defense

Plaintiff argues, as she did in her prior Motion to Compel, that defendants'

invocation of the Mount Healthy affirmative defense[6] waives the attorney-client privilege

regarding all advice defendants' received surrounding plaintiff's termination because the

defense puts the bases for defendants' decision to terminate plaintiff at issue.  Dkt. No.

65-1 at 12.  In assessing whether defendants would have terminated plaintiff due to the

alleged conflict of interest regardless of her protected speech, plaintiff asserts that the

Court will be required to look into defendants' state of mind and the factors they would

have considered.  Id. at 12-13.  Plaintiff argues that the McTiernan Memo and McTiernan

and Gerstman's deposition testimony, demonstrate that it is indisputable that the advice of

counsel "was a cornerstone of their decision to fire Plaintiff . . . ."  Id. at 12.  Defendants

argue that their raising the Mount Healthy defense does not result in a broad waiver of the

attorney-client privilege because the defense asserts that they "would have terminated

Plaintiff's employment regardless of whether she had commenced the Wandering Dago

lawsuit," which is not an advice of counsel defense.  Dkt. No. 69 at 19.

In its August 2016 Decision, the Court acknowledged that the attorney-client

privilege can be waived when a client asserts reliance on an attorney's advice as an

element of a claim or a defense.  Dkt. No. 47 at 50.  Further, the Court noted that if

---

[6]  The Mount Healthy defense requires the defendant to demonstrate "by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct."  Smith v. County of Suffolk, 776 F.3d 114, 119 (2d Cir. 2015).

defendants relied on the advice of counsel in making the decision to terminate plaintiff,

they may have placed the content of the privileged communications "at issue."  Id. at 50-

51.  The Court declined, at that time, to decide whether the Mount Healthy defense

waived the privilege because it "is not until defendants are asked whether they relied on

certain communications in making the decision to terminate plaintiff that the undersigned

can assess whether that reliance puts attorney-client privileged advice 'at issue.'"  Dkt. No.

47 at 51.  Plaintiff has since demonstrated that at least defendants McTiernan and

Gerstman relied, in part, on the advice of counsel in terminating plaintiff, and that other

defendants – Volforte, Lodico, and Conlon – either gave or received legal advice

surrounding terminating plaintiff or the propriety of her conduct.  Dkt. No. 65-4 at 3-5.[7]

(Gerstman); Dkt. No. 65-5 at 3[8] (McTiernan); Dkt. No. 65-6 at 3[9] (Volforte); Dkt. No. 65-9

---

[7]
" . . . I wanted to ensure that we were doing everything within the letter of the law in discharging her"; "I
wanted to make sure it was appropriate to legally discharge her . . . That we didn't violate any laws by
doing so . . . . Any particular state laws that – regarding probationary employees"; in response to whether
Volforte gave advice, "Yeah, I believe so . . . . I believe that he said that he were on firm ground if we
made a decision to fire her . . . I understood that to mean we were legally authorized to do so without any
repercussions."; "I felt that we were – after checking with Mike Volforte, we were entirely within our rights
to discharge the probationary employee, that that was going to remedy the situation, and that was
sufficient for our purposes."

[8] "Because I was trying to find advice about how to respond to the facts or conclusions that had
come my way concerning Andrea"; stating that he called Volforte "[t]o seek advice" and "in an effort to get
confirmation that advice that I had received from the DEC, office of personnel, was appropriate and
prudent under the circumstances."; " . . . asked her, was there something else that should be done, did it
seem like Phil and Ben had this correct, that's what I remember asking Deb Christian."; "I remember a
meeting with Phil Lodico where the possibility of termination was discussed."; referring to conversation
with Lodico: "I believe that in this discussion that we're referring to, we were running through the various
options available to the department."; responding to the advice he was given from Volforte: " . . . if a
permanent employee took some sort of action that in the mind of his or her supervisor, would require
some disciplinary sanction, that when that employee was in the probationary period, they should be
terminated."; indicating that he was meeting with Christian or Lodico, "to make sure we touched all the
bases, filled in all the gaps, whatever would be required to keep moving, at this point, towards a final
resolution."; indicating that Volforte informed him that Public Officers Law § 74 "was one of the things we
should consider"; Volforte, " . . . offered the confirmation or advice that in this circumstance, termination
was really the only option."; stating that when he spoke with Volforte, he was seeking "[t]he application of

20

at 3[10] (Lodico); Dkt. No. 65-10 at 4[11] (Conlon).

As this Court has previously set forth, Dkt. No. 47 at 47, the Mount Healthy defense to some extent, is subjective in that it inquires into the defendant's state of mind. Although the state of mind element of the Mount Healthy defense may be less significant than in the oft-cited examples of state of mind defenses – such as an advice of counsel defense or a good faith defense – the question whether a defendant would still proceed with an action even in absence of protected conduct is relevant when discovery demonstrates that defendants relied on counsel's advice in making their determination to proceed with a certain course of action.  Id. (quoting Smith v. County of Suffolk, 776 F.3d 114, 119 (2d Cir. 2015) (additional citation omitted)).  Here, defendants relied, to some degree, on counsel's advice in assessing plaintiff's conduct and deciding to terminate her.

Although there is no indication that defendants solely relied on advice of counsel in terminating plaintiff, there is no authority holding that defendants had to rely solely on advice of counsel in making their determination in order for the legal advice to be considered "at issue."  The Court finds helpful the case of Hicks v. T.L. Cannon Mgmt.

---

law to a particular employee, the answer is – was perhaps a policy call, perhaps a legal call, I don't know."

[9]  Confirming that he was being asked, at least in part, about legal advice and he provided legal advice.

[10]  Noting that the "tenor of the conversation . . . what do we do with a lawyer whose job now appears significantly affected by the outside activity"; confirming that he provided "advice on questions of law to Mr. McTiernan"; confirming that he was "asked to give advice about the DEC's options under the law."; noting that at a meeting with McTierna, Conlon, Christian, and possibly Brody, he "probably opined" on "options available under the Civil Service Law"; indicating that he "believed he did" provide advice on the Civil Service Law.

[11]  Confirming that his discussion with Brody was, "in part," "about the propriety or impropriety of the plaintiff's conduct."; confirming that he went to Brody "in part" to seek advice on a matter of law."

Corp., 2015 WL 5167225, at *3-4, a wage and hour case brought under, inter alia, the

Fair Labor Standards Act.  In Hicks, the defendants raised the good faith defense in

contending that the plaintiff should not be entitled to liquidated damages.  Id. at *4.  The

Western District of New York noted that the good faith defense had a subjective

component, requiring the employer to show that "it took active steps to ascertain the

dictates of the FLSA and then act to comply with them."  Id. at *3 (internal citation and

quotation marks omitted).  The Court noted that, in raising the good faith defense, which

has a subjective component, the defendants "maintain that they should be permitted to

argue to the jury that they acted in good faith, but to remove from the jury's evaluation of

their subjective state of mind any consideration of communications with or advice from

counsel."  Id. at *4.  The Court concluded that it was clear that the parties relied on advice

of counsel in issuing a wage notice as parties testified to their reliance.  Id.  The Court

held that defendants could not raise the good faith defense to oppose implementation of

liquidated damages but then "shield from disclosure the very communications with

counsel that they themselves admit informed their belief that the [wage] notice was

adequate."  Id. Thus, the Court concluded the good faith defense amounted to an implied

waiver of the attorney-client privilege.

The Court further concluded that it was irrelevant that the defendants could

"identify other facts contributing to their 'good faith' state of mind," but because they also

relied on advice of counsel in making their determination, "fairness dictates that they not

be permitted to shield from plaintiffs – and ultimately the jury – the substance of the

attorney-client communications that [the defendant' admitted were part of her decision to

issue the wage notice central to some of the class claims." Id.

Although Hicks involves a different defense and legal claims, its rationale applies equally here.  Defendants relied on advice of counsel in terminating plaintiff – they inquired whether plaintiff violated certain laws and sought confirmation as to whether they were legally allowed to terminate plaintiff without repercussions.   Although it is certainly likely that defendants relied on other reasons in making their ultimate determination to terminate plaintiff, it is without cavil that advice of counsel was one of the factors considered.[12]

The Court acknowledges, as it did before, that no court has previously held that the Mount Healthy defense acts as a waiver of the attorney-client privilege where the defendants relied on the advice of counsel.  However, there is also no court that has appeared to have confronted and rejected this argument.  Thus, after careful consideration, the Court finds that defendants' raising of the Mount Healthy affirmative defense has waived the attorney-client privilege.  The Court reaches this conclusion because, as the depositions establish, defendants relied on the advice of counsel in coming to their ultimate determination to terminate plaintiff, and the Mount Healthy defense is, in part, a subjective inquiry; thus, defendants have placed the attorney-client privileged advice at issue.

In so holding, the Court acknowledges the significance of the attorney-client

---

[12] "The Second Circuit has not determined whether a certain degree of reliance on counsel is needed in order to waiver the privilege."  See Dkt. No. 47 (quoting In Re County of Erie, 546 F.3d at 229) (noting that the Second Circuit declined to determine whether a certain degree of reliance on advice of counsel is needed to waive privilege).

privilege, <u>Schaeffler</u>, 806 F.3d at 40, but to hold otherwise in this case would be to permit defendants to use the privileged advice as both a "sword and a shield." <u>See</u>, <u>e.g.</u>, <u>Giordano v. United States</u>, 3:11-CV-9 (MRK), 2011 WL 1831578, at *2 (D. Conn. Mar. 17, 2011) (citation omitted), which would lead to inequity that this Court cannot ignore as it would cause prejudice to plaintiff. <u>See generally</u> <u>In re Buspirone Antitrust Litigation</u>, 208 F.R.D. 516, 520 (S.D.N.Y. 2002) (citing cases). Under these circumstances, fundamental fairness supports a finding that subject-matter waiver has occurred.

In reaching this conclusion, the Court notes that it does not find the <u>Mount Healthy</u> defense to be significantly distinguishable from those defenses courts have repeatedly held places the attorney advice "at issue," such as the advice of counsel or good faith defenses. <u>See</u>, <u>e.g.</u>, <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991), <u>cert. denied</u>, 502 U.S. 813 (1991) (holding that the defendant client's advice of counsel basis for "good faith belief" as a defense to stock fraud indictment placed the legal advice evidencing client's knowledge of the law directly in issue); <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) ("[I]f (1) a defendant claims the defense of good faith, and (2) that claim can only be scrutinized by examining the disputed communications, then that defendant has waived the privilege.") (citations omitted). The Court makes clear that it is not holding that there is an automatic waiver of the attorney-client privilege when a defendant raises the <u>Mount Healthy</u> defense, or even that each defendant who consulted with counsel will have automatically waived the privilege if the assert a <u>Mount Healthy</u> defense. Rather, the Court holds, where a defendant raises the <u>Mount Healthy</u> defense and it is clear that he relied on counsel's advice in taking certain

actions, where the specific legal advice is relevant to the defendants' decision, the attorney-client privilege is waived with respect to advice sought and received in making that decision.  See, e.g., Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *12 (S.D.N.Y. Sept. 16, 1994) (noting that "[e]ven where a party's state of knowledge is particularly at issue, such as in a case involving claims of laches" the attorney-client privilege is not necessarily waived unless "the specific content of legal advice received [is needed] to prove a claim or a defense").  Here, the Court finds that, because the content of attorney's advice is needed in assessing the defendants' Mount Healthy defense and it is clear that defendants relied on this advice, there is a subject matter waiver of the attorney-client privilege with respect to the legal advice received regarding plaintiff's alleged conflict of interest.

Accordingly, the Court, exercising its "sound discretion," United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000), concludes that the defendants' raising of the Mount Healthy defense put the legal advice they received from counsel at issue.  Thus, defendants have waived the attorney-client privilege insofar as it relies to legal advice they received from counsel as to whether plaintiff's conduct violated any rules, regulations, or laws, and/or any legal advice counsel gave regarding whether to terminate plaintiff, including whether defendants would violate any laws if they chose to terminate plaintiff.

### V.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion to Compel, Dkt. No. 65, is **GRANTED in part:**

25

defendants must produce all documents withheld or redacted due to attorney-client privilege or attorney work-product that contain advice given by counsel or received on the issues of (1) whether plaintiff's conduct violated any laws, rules, or regulations, and (2) considerations relating to the determination to terminate plaintiff; and it is further

**ORDERED**, that plaintiff's motion, insofar as she requests further deposition of named defendants, is **GRANTED**, insofar as:

(1) plaintiff will be permitted to depose the following defendants: Lodico, Conlon, Volforte, and McTiernan about conversations relating to plaintiff's alleged conflict of interest or the considerations made in deciding to terminate plaintiff that these defendants previously declined to testify about to due to the attorney-client privilege;

(2) defendants, within **thirty (30) days** of entry of this Memorandum-Decision and Order , must produce any documents previously withheld or redacted on the basis of attorney-client privilege or attorney-work product if those documents contain legal advice given or received on the issues of: whether plaintiff's conduct violated any laws, rules, or regulations, and considerations given/received relating to the determination to terminate plaintiff, and if no such documents exist, defendants must provide a clear statement as to the lack of such documents within **thirty (30) days** of entry of this Memorandum-Decision and Order ;

(3) in addition to releasing relevant documents previously withheld or unredacted versions of documents, within thirty (30) days of entry of this Memorandum-Decision and Order, defendants must provide plaintiff with either an updated privilege log or a memorandum that clearly indicates that any documents withheld following this Memorandum-Decision

26

and Order on the bases of attorney-client privilege or attorney work-product are unrelated to the issues of advice given regarding the legality of plaintiff's conduct or the decision to terminate plaintiff;

(4) if nonparties have certain privileged documents relating to the issues set forth above or unredacted versions of documents previously withheld as privileged, nonparties must, within **thirty (30)** days of entry of this Memorandum-Decision and Order, disclose such documents to plaintiff <u>or</u> release a statement indicating that no such documents are in their possession; and it is further

ORDERED, that plaintiff's motion to compel, Dkt. No. 65, is otherwise **DENIED**: the Court declines to order defendants to pay for the costs of further depositions as defendants; and it is further

ORDERED, that if plaintiff wishes to hold further depositions, such depositions must be limited to matters that defendants previously refused to testify to on the basis of attorney-client privilege or matters that arise following any disclosure of additional documents, and plaintiff must hold such depositions within **sixty (60)** days of entry of this Memorandum-Decision & Order, and must do so at plaintiff's expense; and it is further

ORDERED, that the dispositive motion deadline is January 4, 2019; and it is further

ORDERED, that the Clerk of the Court serve this Memorandum-Decision and Order on parties in accordance with the local rules.

**IT IS SO ORDERED.**

Dated: August 22, 2018
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

27